EDWARD PARSONS, plaintiff in error, *vs.* EARLY W. THRASHER, defendant in error.

This Court will not interfere with the grant of a new trial, when the design of granting it, was that the parties might be heard to better advantage, and the principles involved, be more carefully considered.

Equity. New trial granted. By N. G. FOSTER, military appointee. Morgan Superior Court. March Term, 1868.

On the 28th of December, 1858, Parsons borrowed, from Thrasher, $2,500 00 at 12½ cents interest *per annum*, and to secure its payment, gave Thrasher a mortgage on fifty acres of land, near Atlanta, Georgia. During 1860, Thrasher foreclosed the mortgage for said principal and usurious interest, and, under his mortgage *fi. fa.*, had the sheriff to sell forty acres of said land, on the first Monday in November, 1860. It brought $600 00 or $700 00. Parsons, being a non-resident, knew nothing of the sale. On the first Tuesday in October, 1861, the balance of said land was sold by the sheriff, by virtue of a mortgage *fi. fa.*, founded on a judgment obtained in April, 1861, for $1,376 00. Thrasher bought both places at said sales, but neither paid said amounts to the sheriff nor credited them on said *fi. fa.*

Up to the 3rd of February, 1862, Parsons had paid Thrasher, in cash, say $1,500 00. Deducting this, and cost of foreclosure, from the original loan, and allowing no credit for said bids, Parsons would owe Thrasher but $1,582 00. On that day, Parsons applied to Thrasher to have said lands reconveyed to him. Thrasher refused to reconvey it, except upon the terms of counting said usury and original loan, and taking from it, said cash payments, less the costs of foreclosure. This left a balance of $3,002 50 due Thrasher. Parsons agreed to it, and gave to Thrasher his two promisory notes, to be due on the 25th of December, 1862 and 1863, respectively, for $1,687 50, and for $1,898 40, respectively, so as to include 12½ cents *per annum*, on said $3,003 50, till the maturity of said notes. Thrasher gave Parsons his bond for a quit claim title to said land, "upon the payment of said notes." In Georgia, at that time, Confederate money

was the only currency, and it was understood, and agreed that these notes were to be paid in that currency. When the first one was due, Parsons did not pay it in such currency. The last one is due, and unpaid, but Parsons has offered, and still offers to pay Thrasher what he ought to have. All these transactions were but one, having for its object, the repayment of the original loan, and the promised usury. This last note has been sued upon in the United States' District Court, for the Northern District of Georgia, in favor of McIntyre & Brother, bearers.

With these averments, Parsons prayed for discovery from Thrasher, and that if Thrasher still held the unpaid note, it should be stripped of its usury, and declared paid, or if Thrasher had sold the note, that then, Parsons should have from Thrasher, a reconveyance of said lands.

To this bill, Thrasher filed a general demurrer, and answer at the same time. The demurrer was never passed upon. By his answer, Thrasher admitted the loan, at the said usurious rate, but stated as follows : He took Parson's note for $2,675 00, at twelve months, thus including legal interest only, and took a mortgage on only twelve and a quarter acres of the land described in the bill. For the usury, he took a separate obligation. On this mortgage, he obtained a rule absolute, on the 5th of April, 1861, for the principal, and $237 75 interest, and at a sheriff's sale, under his mortgage *fi. fa.*, on the first Tuesday on October, 1861, he bought said twelve and a quarter acres at $1,376 00, and had that amount credited on his said mortgage *fi. fa.* Before that sale, he had bought a mortgage *fi. fa.* in favor of McMasters Roark & McMasters, executors, vs. said Parsons, founded upon a judgment dated 16th June, 1856, for $726 75, principal, and $131 46, interest, and at a sheriff's sale, in November, 1860, under this *fi. fa.*, Thrasher bid off said forty acres of land, joining the other lot, at $1,020 00, and had that amount creditited on that *fi. fa.* Thrasher took possession of the lands, and afterwards sold part of it to one Richard Parsons. Parsons did pay him say $1,500 00 cash, up to the 3rd of February, 1862. On that day Parsons of-

fered to buy back the lands which Thrasher still owned, and Thrasher agreed to sell them to him for cash, at $4,502 50, less the said $1,500 65 cash paid. Parsons had not the cash balance, and thereupon, it was agreed that, if Parsons would release all claim for usury, and, in writing, promise never to claim or plead it, Thrasher would let him have the lands, on a credit, for $3,585 90, give him his bond for quit claim titles, cancel the old *fi. fas.* and notes, and take the two new notes described in the bill. This trade was consummated. But there was nothing said, at the time, about receiving payment in Confederate money, and Thrasher took such currency, afterwards, in payment of the first note due, because then he could use the same. And this resale was no part of the original transaction, but an independant sale by Thrasher, as absolute owner, to Parsons, as purchaser.

Thrasher denied that Parsons was a non-resident, and the alleged offer to pay him. Needing money, he, in good faith, traded off this unpaid note to McIntyre & Brother, through his attorney. Said attorney represented to them that the note was secured, by the fact that the title to said land, was in Thrasher, and verbally guaranteed the payment of it, and they took the note, and gave him their promise to pay Thrasher the amount called for by the note, in the fall of 1867. He averred that Parsons had no family, nor any other property, and he feared that, if he were compelled to convey the lands to Parsons, he would sell the same, not pay said note, and leave him liable on said verbal guaranty. The parties went to trial upon the bill and answer only. The jury were charged that the facts set forth in the answer did not show Thrasher liable for said transferred note, as guarantor, in any event, and that if he had transferred the note, and was not liable as guarantor, he had no further interest in the land, and they should find that Thrasher should convey the land to Parsons. The jury found, accordingly, that Thrasher should make the conveyance.

Thrasher's solicitors had requested that the jury should be charged that such verbal guaranty did bind him, and that

Parsons *vs.* Thrasher.

Parson's could not have the land conveyed to him before he had paid said note.

A new trial was moved for upon the grounds that the charge as given was erroneous; that the failure to give the charge requested was error, and that the verdict was contrary to the evidence, etc.   A new trial was ordered and this is assigned as error.

HOGE & SPRAYBERRY, for plaintiffs in error.

BAUGH & THRASHER, for defendants in error.

HARRIS, J.

The bill filed in this case by Parsons, was for specific performance—to compel Thrasher to make titles to lands purchased by complainant from him.   It alleged that the notes given for the purchase money were infected with usury; and that if the transaction was freed from it, it would be found that the principal and legal interest of the purchase money had been paid by Parsons.   If this allegation shall be sustained by proof we do not see why Thrasher should not be compelled to comply with his contract.   The answer of Thrasher, however, sets up that a note of Parson's remains unpaid; that the note had been before it was due, negotiated by him to McIntyre & Brother, with his guaranty of it, and that the land sold to Parsons was liable to its payment.

The case was tried, and the Judge not being satisfied with some of his rulings in the progress of the case, granted a new trial.

Without the expression of any opinion whatever, as to the right of complainant to a specific performance, until the note guaranteed by Thrasher shall have been taken up by complainant, we simply declare our unwillingness to interfere with the grant of a new trial, as its design was that both parties might be heard to better advantage and the principles involved be more carefully considered.

Judgment affirmed.